PEOPLE, PLAINTIFF AND APPELLEE, v. FIGUEROA, DEFENDANT AND APPELLANT.

APPEAL from the District Court of Ponce in a Prosecution for Violation of the Excise-Tax Law.

No. 1970.—Decided May 21, 1923.

STILLS—REGISTRATION—PLEADING—COMPLAINT.—If a complaint for violation of section 61 of the Excise-Tax Law charges the defendant with having in his possession and custody a still on the farm of his father, it can not be concluded that the complaint alleges that the father and not the defendant was the owner of the still.

ID.—ID.—ID.—ID.—In a complaint for violation of section 61 of the Excise-Tax Law it is not necessary to allege that the defendant had the still in his possession for illicit purposes.

ID.—ID.—EVIDENCE.—Evidence that the defendant was seen carrying a can of charcoal towards a still in operation on his father's property and that when returning for another can he started to turn back upon discovering the police, after which he denied all connection with the still, is not sufficient to establish a violation of section 61 of the Excise-Tax Law. The defendant not being the owner of the property, it should be made clear that it was the duty of the defendant himself, rather than of any other person, to apply for and obtain a license.

The facts are stated in the opinion.

The appellant did not appear.

*Mr. José E. Figueras, Fiscal,* for the appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

Defendant, charged with having an unlicensed still, filed a demurrer which was overruled. Error is assigned on this action of the court. Appellant maintains that the complaint set up that his father and not himself was the owner of the still. The complaint charged appellant with having in his possession and custody a still "on the farm of his father." It is thus not alleged that the still belonged to the father.

Another objection to the complaint is that it fails to state the purposes for which the still was to be used. As we understand appellant, the theory is that he could only have obtained a license from the Treasurer if he were going to use the still for medicinal or scientific purposes; that if he disclosed any other purpose, the Treasurer could

not obtain revenue for an illicit still and hence, to make the complaint valid it should have set forth a licit use. We have, however, decided in other cases that all stills should be recorded. *People* v. *Rosaly,* 28 P. R. R. 438, and cases following. In the Rosaly case, page 440, it is said:

"If the still is useless or is being used for an illicit purpose the Legislature may nevertheless require a record of the still, so as to prosecute for having a still and using it without a license. The Jones Act does not destroy the sections of the revenue laws which prohibit the use of a still without a license."

There is a remote possibility that a person having a still in his possession would want to have a license from the treasury even though he did not want to use the still. However, what the law makes necessary is that stills be recorded.

Other alleged defects were of form and as the demurrer was only presented at the trial and immediately overruled, such defects need not be considered. *People* v. *Paris,* 25 P. R. R. 103; *People* v. *Rosaly, supra.*

The other assignments of error relate to the proof and principally that the evidence was insufficient for a conviction. Escaracciolo Beauchamp testified in substance that he was an insular policeman and that in a search for stills and with the idea that there was one in the house of the defendant, he and another policeman went to the said house. At 30 paces from the house the witness saw the defendant, bearing a can of charcoal, come to the place, a little piece of woods where there was a still. Defendant put this can down near the still and then went back for another. Then he discovered the policemen and started to turn back, but the policemen called him. To them defendant said that the farm belonged to his father, but that the still did not belong to them. In plain sight of the witness a still was being operated. Witness knew what vegetable charcoal was, testified that the father of the defendant said that the

farm belonged to him, and also testified that father and son lived in the same house. The other policeman gave similar testimony. Questioned as to how he knew that the still was under the control of the defendant, the policeman said that he knew this fact because he saw defendant carrying the can to the still, but admitted that he did not see him do any-thing else in connection with the still. The defendant and his witnesses denied the possession or custody of the still and denied also that defendant bore the cans. It is a demonstrated and conceded fact that the farm belonged to the father.

Analysed, the evidence is that the defendant was seen carrying a can of charcoal to an active still on the farm of his father, and as he was going back for another can, retired on seeing the policemen and subsequently denied all connection with the still. The conclusion is inevitable that someone was operating an illicit still on the farm of defendant's father and it seems probable that defendant perjured himself when he denied having carried the can and also in disclaiming any knowledge of the ownership of the apparatus. Nevertheless, despite a guilty knowledge on the part of the defendant, the evidence is equally consistent with the ownership and control in his father or in someone else whom the defendant was trying or was willing to shield. Merely carrying a can to a still and subsequent conduct indicating a guilty conscience does not establish either the ownership or control of the defendant, under the facts of this case. Perhaps if the proof had shown that the farm and house belonged to the defendant rather than to his father, the proof offered might be sufficient, *People* v. *Hernández*, 29 P. R. R. 53, but that is not this case.

Furthermore, this is a prosecution for failure to obtain a license and it should be clear that it was the duty of this particular defendant rather than of anyone else to apply for and obtain a license.

The judgment must be reversed and the prisoner discharged.

*Reversed.*

Chief Justice Del Toro and Justices Aldrey and Hutchison concurred.

Mr. Justice Franco Soto took no part in the decision of this case.